**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **KIMBERLY LYNN LEWIS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No. 1:08-cv-797-TFM** |
| **vs.** | )    **[wo]** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kimberly Lewis ("Lewis") appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for supplemental security income under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 *et seq*.  Judicial review proceeds pursuant to 42 U.S.C. § 1383(c)(3) and 28 U.S.C. § 636 (c), and for reasons herein explained,  the court REMANDS this case to the Commissioner.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited.    The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Lewis, age 34 at the time of the hearing, completed the eleventh grade and attended special education classes.[1] Employment as a deli/bakery worker is the only past work listed for Lewis.[2] She has not engaged in substantial gainful work activity since the application date of March 24, 2006, which alleged a disability onset date of February 5,

---

[1] R. at 135.
[2] R. at 131.

2001.[3]  Lewis' disability application claims she is unable to work because of paranoia, bipolar disorder, and dyslexia.  She explained that she has a hard time dealing with people and could "work if [she] did not have to put up with people."[4]

Lewis acknowledged during her hearing that she has never worked for any significant period of time at any job and has a total lifetime earnings total of $1870.00.[5] The ALJ questioned Lewis about her difficulties in getting along with coworkers, and Lewis testified that, though she had a hard time talking to them, the problem did not escalate into quarrels or altercations.  Lewis also has trouble paying attention to assigned tasks and with getting the tasks accomplished on schedule.[6]  Lewis began mental health counseling about three years before the hearing because she was suicidal and angry.  She admitted attempting suicide "a couple" of times.[7]

Lewis stated that she is only comfortable in the company of her husband and best friend, and that she doesn't answer the door to unknown persons.[8]  She described having auditory hallucinations, crying several times a week, and smoking marijuana to calm herself.[9]  Lewis has three children but admitted that she lost custody due to her shortcomings as a parent.[10]

Lewis was examined by Walter Jacobs, Ph.D., on May 11, 2006.  Dr. Jacobs was skeptical of Lewis' allegations of abuse by her biological father, noted her past arrest for

---

[3] R. at 39.
[4] R. at 131.
[5] R. at 4.
[6] R. at 7.
[7] R. at 9.
[8] R. at 10-12.
[9] R. at 13-15.
[10] R. at 15-16.

marijuana, and found Lewis was histrionic.[11]  He assessed her full range IQ score at 84 (low average), diagnosed mood disorder/personality disorder, with a poor prognosis for substantial change.[12]  The ALJ gave little weight to Dr. Jacobs' evaluation of Lewis.[13]

Also in May, 2006, state agency consultant William Simpson, Ph.D., used Lewis' records to complete a Psychiatric Review Technique Form (PRTF) and Mental Residual Functional Capacity Assessment.  The PRTF found medically determinable impairments in the categories of affective disorder, personality disorder, and substance abuse.[14]  Dr. Simpson rated Lewis' restriction of activities of daily living as mild, with moderate ratings in maintaining social functioning and maintaining concentration, persistence, or pace.  Lewis has not had episodes of decompensation.[15]  The Mental Residual Functional Capacity Assessment found moderate limitations in Lewis' abilities to understand/remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.[16]  The assessment concluded with Dr. Simpson's opinions that Lewis can attend and concentrate for two-hour periods, and a recommendation that she work in a setting which doesn't require frequent contact with the general public.[17]  The ALJ gave significant weight to Dr. Simpson's evaluation of Lewis' records.[18]

---

[11] R. at 209-10.
[12] R. at 211.
[13] R. at 42.
[14] R. at 216, 220-21.
[15] R. at 223.
[16] R. at 227-28.
[17] R. at 229.
[18] R. at 47.

Lewis sought mental health treatment at South Central Alabama Mental Health. Dr. Sharon Brown, Ph.D., listed diagnoses of major depressive disorder, recurrent, severe with psychosis, cannabis dependence, and a GAF of 60.[19]   Treatment over the next few months showed decreased depression, and a physician assessment stated that Lewis was stable on medication (Lexapro and Geodon) as of April 20, 2007.[20]   Lewis reported depression, hallucinations, and suicidal ideation to South Central Alabama Mental Health on May 25, 2007.   Despite Lewis' denial of recent drug use, she was diagnosed as cannabis dependent and hospitalized on June 2, 2007 with a positive drug screen. Document show that Lewis was released two days later and diagnosed with mood disorder, anxiety disorder, psychosis, THC (tetrahydrocannabinol) dependence, and borderline personality traits.[21]   Dr. Brown saw Lewis on June 8, 2007, and changed her diagnosis to match the hospital's discharge diagnosis.[22]   On October 31, 2007, Dr. Brown completed a ratings form indicating Lewis has moderate or marked impairment in several types of mental performance, with extreme limitations in her ability to complete a normal workday/workweek without interruptions due to psychologically based symptoms, and to respond to customary work pressures.[23]   The ALJ noted that Dr. Brown completed this form on a day when she did not examine Lewis and provided no explanation for her

---

[19] R. at 272.
[20] R. at 41; 261.
[21] R. at 41.
[22] R. at 41-42.
[23] R. at 283-85; 42.

conclusions.[24]   The ALJ gave no weight to Dr. Brown's opinion as to Lewis' mental health.[25]

Jody Skinner provided vocational expert (VE) testimony.  The ALJ asked whether a person with a GAF score of 60 could perform substantial gainful activity.  The VE responded that such a person could perform light, unskilled work such as an assembler, food preparer, or fast food cook.[26]   The VE also stated that sedentary, unskilled jobs would be appropriate for such a person.  She listed assembler, surveillance system monitor, and miscellaneous food preparer as possible jobs.[27]

The ALJ found Lewis is severely impaired by a combination of affective/mood disorder, THC (tetrahydrocannabinol) abuse/dependence, and borderline personality traits.[28]   The ALJ found Lewis' combined impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.[29]   The ALJ specified that Lewis' claims of bipolar disorder, depressed and posttraumatic stress disorder, major depressive disorder with psychosis did not meet the required durational period of twelve months, and were undermined by the lack of credibility noted in Dr. Jacob's report.  The ALJ further found that dyslexia is not an impairment under the Act.[30] The ALJ discussed the severity of Lewis' diagnosed mental disorders to find that none of the criteria in Listing Sections 12.04, 12.05, 12.06, 12.08, or12.09 were met due to a lack of convincing evidence that Lewis has any limitations beyond "mild" in her activities of

---

[24] R. at 43.
[25] R. at 43.
[26] R. at 25-26.
[27] R. at 27-28.
[28] R. at 39.
[29] R. at 43.
[30] R. at 43.

daily living.[31]  The decision also noted Lewis' statement that she could work if she didn't have to put up with people.[32]

The ALJ specifically stated that he gave careful consideration to the entire record before finding Lewis capable of the full range of work at all exertional levels, but that she is limited to unskilled work with only occasional interaction with the general public and coworkers.[33]  Lewis' limited work history led the ALJ to find she has no past relevant work for purposes of her application, but the VE's testimony, which he deemed reliable, led him to also find that there are jobs in significant numbers in the national economy that Lewis can perform.  The ALJ specifically listed assembler (light and sedentary), surveillance monitor (sedentary) and miscellaneous food preparation (light) as occupations suitable for Lewis.[34]

The ALJ found Lewis is able to perform the occupations identified by the VE as suitable for a person of her age, education and capabilities, and has not been under a disability from the alleged onset date through the date of decision.[35]  The finding that Lewis is able to perform past work led the ALJ to conclude she is not entitled to disability benefits under the Act.[36]

### III.  ISSUES

Lewis raises two issues for judicial review:

---

[31] R. at 44.
[32] R. at 45.
[33] R. at 45.
[34] R. at 48-49.
[35] R. at 49.
[36] R. at 22.  The ALJ's disability analysis followed the  five-step sequential evaluation process set forth in 20 C.F.R. §404.1520  and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

1.   Whether the Commissioner met his fifth-step burden of proving Lewis is capable of performing other work which exists in significant numbers in the national economy; and

2.   Whether the ALJ posed a complete hypothetical to the vocational expert.

## IV.  DISCUSSION

### The ALJ failed to pose a complete hypothetical to the VE.

Lewis argues the ALJ did not pose a complete hypothetical to the VE, and the VE's testimony does not constitute substantial evidence for his finding that she is able to perform the work identified in the ALJ decision. The Commissioner responds that the omission of Lewis' limitations was harmless error.

The Eleventh Circuit has noted that, where an ALJ finds it necessary to consult a vocational expert, the expert's testimony is only deemed substantial evidence where the ALJ  posed a hypothetical question which included all of the claimant's impairments. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n.7 (11th Cir. 2004) (citing *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999).  Here, the ALJ found Lewis capable of unskilled work at all exertional levels, with the limitation that she have only occasional interaction with the general public and coworkers.  The ALJ did not instruct the VE that the hypothetical person at issue should have occasional interaction with the general public and coworkers. The  VE identified assembler,  surveillance  system  monitor,  and  miscellaneous  food preparer as jobs suitable for the hypothetical person posed by the ALJ.[37]   The ALJ's

---

[37] R. at 27-28.

decision cited the VE's testimony to find that Lewis can make a successful adjustment to other work suitable for her.[38]

The Commissioner concedes the jobs of surveillance system monitor and miscellaneous food preparer are inappropriate for Lewis because the first entails significant contact with people and the latter requires semiskilled work.[39]  However, the Commissioner argues that it was harmless error for the ALJ to omit Lewis' social limitations from the VE's hypothetical because the final occupation identified by the ALJ, assembler, does not require significant interaction with coworkers or the general public.  The Commissioner supports his position by citing an opinion from Dr. Sharon Brown (Lewis' treating psychologist) which estimated that Lewis is only mildly impaired in her ability to interact with the general public.  The Commissioner offers additional support for his position that Lewis is capable of working as an assembler through attached excerpts from the Dictionary of Occupational Titles (DOT).[40]   The Commissioner submits the DOT excerpt shows that assemblers do not have significant interaction with people.[41]

The Court cannot accept the Commissioner's harmless error argument.  Even though the ALJ gave no weight to Dr. Brown's opinion, the Commissioner now offers it as support for Lewis' ability to interact with others with only mild limitations.[42]  If Dr. Brown is to be relied upon by the Commissioner for this argument, the more relevant

---

[38] R. at 49.
[39] Def. Br. at 10, n.4-5.
[40] *See* Doc. 13-2.
[41] Def. Br. at 10.
[42] The Commissioner also relied upon the ALJ's rejection of Dr. Brown's opinion earlier in his brief.  Def. Br. at 7.

finding from her discredited opinion would be the finding that Lewis has a marked ability to get along with coworkers or peers.[43]  Further, the Court's review of the DOT excerpt for Assemblers states the worker "[F]requently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker."[44]  This type of work would place Lewis in frequent contact with coworkers, a workplace situation which would seem to create work conditions in direct conflict with the ALJ's findings.  The omission of Lewis' social limitations from the hypothetical means the VE's opinion cannot be deemed substantial evidence.  *Phillips, id*.  Consequently, the record lacks information on whether Lewis can work as an assembler, the sole job identified by the Commissioner as appropriate for her limitations.

Where one aspect of an ALJ's determination is not supported by substantial evidence, a court need not reach the other issues raised by plaintiff.  *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).  Due to the lack of VE testimony as to whether a person with Lewis' limitations can work as an assembler, the Court remands this case for clarification as to Lewis' ability to perform the work identified by the VE.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the case should be remanded for compliance with applicable law. It is, therefore, **ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED.**   A separate judgment is entered herewith.

---

[43] R. at 283.
[44] Doc. 13-3, at 1, Dictionary of Occupational Titles 706.684-022 (Assembler).  The Commissioner also attached DOT 716.687-030 (Lens Block Gauger). Doc., 13-2.  The Court notes this section refers to "assembly" as a noun, rather than an actual occupation, and does not consider it relevant to this case.

DONE this 21st day of April, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE